United States Bankruptcy Court
Southern District of Texas

**ENTERED**

February 26, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 22-90032** |
| **GWG HOLDINGS, INC.,** *et al.*, | § | |
| | § | **CHAPTER 11** |
| Debtors. | § | |
| | § | |
| **MICHAEL I. GOLDBERG,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 24-3199** |
| | § | |
| **FOLEY & LARDNER LLP,** | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION</u>

This matter concerns a motion by Foley & Lardner LLP to compel arbitration of the Litigation Trustee's claims pursuant to an arbitration provision contained in an engagement letter between Foley and a Special Committee of GWG's board. Because the Special Committee acted as an authorized GWG agent (and not as a separate entity from GWG), the Trustee is bound by the engagement letter.

The arbitrability of the Trustee's fraudulent transfer and aiding and abetting claims is delegated to the arbitrators. The parties agree the remaining claims are subject to arbitration, and arbitration is compelled on this basis.

The adversary proceeding is abated pending resolution of the arbitration.

## BACKGROUND

On April 20, 2022, GWG Holdings, Inc. and its related entities filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. *See, e.g.*, Case No. 22-90032, ECF No. 1. GWG's second amended joint Chapter 11 plan of liquidation was confirmed on June 20, 2023. Case No. 22-90032, ECF No. 1952.

Prior to the petition date, on May 10, 2019, the board of directors of GWG formed a Special Committee to evaluate potential related-party transactions between GWG and The Beneficient Company Group, L.P. ECF No. 8-3 at 3–6. The Special Committee consisted of two GWG directors, David Chavenson and Kathleen Mason. ECF No. 8-3 at 4. The Special Committee was tasked to evaluate three separate transactions: (a) a $10 million payment from GWG to a third party in exchange for Beneficient common equity; (b) a $65 million loan from GWG to trusts affiliated with Beneficient; and (c) a $79 million transfer to Beneficient in exchange for Beneficient common equity (collectively, the "Beneficient Transactions"). ECF No. 1 at 194. The transactions were approved by the Special Committee. ECF Nos. 8-4 at 2–4; 8-5 at 2–4; 8-6 at 2–6.

At the time of the Special Committee's creation, the board authorized the Special Committee "to retain and compensate, on terms and conditions acceptable to the Special Committee, at the Corporation's expense, . . . legal advisors, as the Special Committee deems appropriate to assist it in discharging its responsibilities and to assist in any Transaction[.]" ECF No. 8-3 at 5. On May 16, 2019, the Special Committee engaged Foley & Lardner LLP to provide the Special Committee with legal representation "in connection with its review of certain transactions between GWG . . . and Beneficient . . ., and matters of corporate governance related thereto[.]" ECF No. 8-2 at 2. Foley represented the Special Committee from May 2019 through March 2020. ECF No. 1 at 6.

The Foley Engagement Letter contains an arbitration provision, which provides:

> If a dispute arises between the Committee and the Firm related in any way to the interpretation, application, or enforcement of this Agreement, any acts or omissions related to or arising from services provided under or in connection with this Agreement, or the issue of arbitrability of the dispute, the Committee and the Firm agree that the dispute will be resolved solely through confidential binding arbitration.

> JAMS will serve as the arbitration administrator, and the arbitration shall proceed pursuant to the JAMS Comprehensive Arbitration Rules and Procedures ("Rules"), except to the extent provided for herein or otherwise agreed to in writing. In the event of a conflict between the terms set forth herein and the applicable JAMS rules, these terms shall govern. The arbitration shall be held in Dallas county. The Federal Arbitration Act ("FAA") shall govern, and, to the extent not inconsistent with the FAA, the arbitrator(s) shall apply the law of Texas to any claims or defenses thereto.

ECF No. 8-2 at 6.

The Trustee of GWG's Litigation Trust filed this adversary proceeding against Foley on September 27, 2024. ECF No. 1. The Trustee has filed a separate adversary proceeding against Chavenson for his alleged breaches of fiduciary duties in approving the Beneficient Transactions, which the Trustee alleges were grossly unfair to GWG. Case No. 24-03090, ECF No. 1. This adversary proceeding concerns whether Foley breached its duties in connection with its representation of the Special Committee.

The complaint asserts four causes of action. The first cause of action is for aiding and abetting / knowing participation in breaches of

fiduciary duties.  ECF No. 1 at 214.  The cause of action alleges that the Special Committee breached its fiduciary duties of care and loyalty when approving the Beneficient Transactions and Foley "knowingly participated in, substantially assisted, encouraged and induced, and otherwise facilitated" the Special Committee's breaches of fiduciary duties, causing GWG harm.  ECF No. 1 at 215–19.

The second cause of action is for professional negligence / legal malpractice.  ECF No. 1 at 219.  The cause of action alleges that Foley "owed a professional duty of care to GWG" because the "Special Committee managed GWG's affairs" and "was in privity with GWG in connection with GWG's delegation of powers to the Special Committee." ECF No. 1 at 220.  The cause of action alleges that Foley breached its professional duties through various alleged negligent actions in connection with its representation of the Special Committee and its investigation of the Beneficient Transactions, causing harm to GWG. ECF No. 1 at 220–25.

The third cause of action alleges that Foley breached its fiduciary duties owed to GWG.  ECF No. 1 at 227–29.  The cause of action alleges that "Foley owed a fiduciary duty of loyalty to GWG" because the "Special Committee managed GWG's affairs" and "was in privity with GWG in connection with GWG's delegation of powers to the Special Committee."  ECF No. 1 at 227.  The claim alleges that Foley breached its fiduciary duties by "consistently fail[ing] to bring known problems and significant concerns to GWG's and the full GWG board's attention," causing harm to GWG.  ECF No. 1 at 228.

The fourth cause of action is for avoidance and recovery of fraudulent transfers pursuant to §§ 544(b) and 550 of the Bankruptcy Code.  ECF No. 1 at 229.  The cause of action essentially alleges that, because Foley's misconduct caused GWG to suffer harm, GWG "did not receive any value, let alone reasonably equivalent value," in exchange for GWG's transfers of $861,446.70 in funds to Foley, i.e., GWG's payment for Foley's services.  ECF No. 1 at 229–30.

On November 6, 2024, Foley moved to compel arbitration of the Trustee's claims and stay this adversary proceeding pursuant to the arbitration clause contained in the Foley Engagement Letter.  ECF No. 8.  The Court held oral argument on the motion on January 7, 2025. ECF No. 15.  The Court requested additional briefing on the issue of whether the Special Committee is a separate entity from GWG and took the motion under advisement.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a).  Venue is proper in this District pursuant to 28 U.S.C. § 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## DISCUSSION

Because the Special Committee acted as GWG's authorized agent, GWG was Foley's ultimate organizational client.  The Trustee is bound by the Foley Engagement Letter's arbitration clause.  The Court has the authority to deny arbitrability of certain types of claims.  *In re Gandy*, 299 F.3d 489, 495 (5th Cir. 2002).  Despite having the authority, the Court does not exercise its discretion to deny arbitration of any of the claims.  Per the arbitration clause, a determination of the arbitrability of the fraudulent transfer and aiding and abetting claims is delegated to the arbitrators.  The adversary proceeding is abated pending resolution of the arbitration.

The parties agree that a valid arbitration agreement exists between Foley and the Special Committee.  The Trustee also concedes that the arbitration clause applies to its second and third claims for relief, rendering those claims subject to arbitration.  ECF No. 10 at 33. The parties dispute whether the Trustee's first cause of action for aiding and abetting and fourth cause of action for avoidance of fraudulent transfers are subject to arbitration.

## I.   GWG WAS FOLEY'S ORGANIZATIONAL CLIENT

The Trustee, on the one hand, concedes that the Special Committee was in privity with GWG, subjecting the Trustee to arbitration for its second and third claims for relief, and on the other hand seems to argue that GWG is a non-signatory to the Foley Engagement Letter, and the Trustee therefore cannot be bound by the arbitration clause for the remaining claims.  ECF No. 10 at 38–46.

Under the Delaware Code, "[t]he business and affairs of every corporation . . . shall be managed by or under the direction of a board of directors, except as may be otherwise provided in this chapter or in its certificate of incorporation."  8 Del. C. § 141(a).  The Delaware Chancery Court has recently held that "[a] board of directors is not a legal entity that can be sued separate and apart from the corporation."  *August v. Glade Prop. Owners Ass'n, Inc.*, 2023 WL 3359466, at *4 (Del. Ch. May 11, 2023).  And under Delaware law, a corporation and its directors are considered joint clients of the corporation's counsel.  *Hyde Park Venture Partners Fund III, L.P. v. FairXchange*, LLC, 292 A.3d 178, 189 (Del. Ch. 2023).

Under § 141(c) of the Delaware Code, "[t]he board of directors may, by resolution passed by a majority of the whole board, designate 1 or more committees, each committee to consist of 1 or more of the directors of the corporation."  The Code further provides that "[a]ny such committee, to the extent provided in the resolution of the board of directors, or in the bylaws of the corporation, shall have and may exercise all the powers and authority of the board of directors in the management of the business and affairs of the corporation . . . ."  *Id.*  A special committee is an arm of the board of directors.  A board of directors may act through its special committee, and both the board and special committee act for the corporation.  *See In re Resorts Intern. Shareholders Litig. Appeals*, 570 A.2d 259, 264 (Del. 1990); *Zapata Corp. v. Maldonado*, 430 A.2d 779, 786 (Del. 1981).

There is no authority for the proposition that GWG's Special Committee was an entity separate from GWG.  Delaware law confirms that a board of directors, and by extension a special committee of the board, is the corporation's authorized agent.  Although GWG's board resolution creating the Special Committee authorized it to employ Foley as counsel, the legal effect of the authorization was to permit the Special Committee to employ Foley on behalf of GWG in order to assist the Special Committee's duties of investigating the Beneficient Transactions for GWG's benefit.  GWG is Foley's ultimate organizational client pursuant to the Foley Engagement Letter.

A bankruptcy trustee stands in the shoes of a debtor for purposes of an arbitration clause and is bound by the clause to the same extent as a debtor.  *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1153 (3d Cir. 1989).

The Trustee is bound by the arbitration clause contained in the Foley Engagement Letter.

## II.   THE COURT DOES NOT DENY ARBITRATION OF THE FRAUDULENT TRANSFER CLAIM

The parties dispute whether the Trustee's fraudulent transfer claim is subject to arbitration.

"The FAA provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Gandy*, 299 F.3d at 494 (quoting 9 U.S.C. § 3).  "A court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement."  *Id.*  "A party wishing to defeat application of the FAA bears the burden of demonstrating 'that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.'"  *Id.* at 495 (quoting *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987)).

A bankruptcy court has discretion to refuse to enforce an arbitration agreement "when the underlying nature of a proceeding derives exclusively from the provisions of the Bankruptcy Code and the arbitration of the proceeding conflicts with the purposes of the Code." *Id.* at 495 (citing *In re National Gypsum*, 118 F.3d 1056, 1067 (5th Cir. 1997)).  "Under the first prong of the *National Gypsum* test, the Court must examine the underlying nature of the proceedings" and "consider each cause of action separately and distinguish those causes which derive from the Bankruptcy Code from those which do not."  *Martinez v. Beneficial Texas, Inc. (In re Martinez)*, No. 06-34385, 2007 WL 1174186, at *5 (Bankr. S.D. Tex. Apr. 19, 2007).  With respect to the second prong, the Fifth Circuit has identified the following factors to consider: "(1) the goal of centralized resolution of purely bankruptcy issues; (2) the need to protect creditors and reorganizing debtors from piecemeal litigation; and (3) the undisputed power of a bankruptcy court to enforce its own orders."  *Id.* (citing *In re Nat'l Gypsum*, 118 F.3d at 1069).  The factors are not exhaustive, and the Court "retains significant discretion to assess whether arbitration would be consistent with the purpose of the Code[.]"  *In re Nat'l Gypsum*, 118 F.3d at 1069.

As in this case, *Trefny* concerned a variety of claims, including a fraudulent conveyance claim under § 548 of the Bankruptcy Code.  The Court nevertheless ordered arbitration of all claims:

> Trefny's claims do not involve important bankruptcy policies.  Trefny does not assert claims against the debtor's estate in this adversary proceeding.  The resolution of the claims against Bear Stearns do not require allocating property of the debtor's estate among creditors.  The resolution of the claims against Bear Stearns do not require interpreting whether an order discharging the debtor has been violated.  Trefny's claims against Bear Stearns arose prepetition and could have been asserted prepetition.  None of Trefny's claims require the interpretation of the SIPA or any technical provision of the

> Bankruptcy Code.  The basis of Trefny's claims is that Bear
> Stearns committed fraud or actionable negligence.
> Arbitration of this issue does not implicate or conflict with
> the bankruptcy law or policies.

*Trefny v. Bear Stearns Sec. Corp.*, 243 B.R. 300, 325 (S.D. Tex. 1999).

The Trustee's fraudulent transfer claim is a core proceeding and implicates the administration of GWG's estate.  *See* 28 U.S.C. § 157(b)(2)(H); *In re Ramirez*, 413 B.R. 621, 628 (Bankr. S.D. Tex. 2009); *In re McCollum*, No. 19-15087-JDW, 2021 WL 4888327, at *3 (Bankr. N.D. Miss. Oct. 19, 2021).  But the claim is premised exclusively on prepetition conduct and relies on the same factual basis as the Trustee's state law claims for relief.  The claim is based on Foley's alleged breaches of fiduciary duties owed GWG and its gross negligence in its representation of the Special Committee.  ECF No. 1 at 229.  The claim alleges that because of these breaches, GWG did not receive any reasonably equivalent value in exchange for its payment for Foley's services.  ECF No. 1 at 230.  The underlying allegations are based on prepetition rights rather than "entirely from federal rights conferred by the Bankruptcy Code."  *See Elite Precision Fabricators, Inc. v. Gen. Dynamics Land Sys., Inc.*, No. CV H-14-2086, 2015 WL 9302843, at *7–8 (S.D. Tex. Dec. 18, 2015).  The fraudulent transfer claim fails the first prong of the *National Gypsum* test.  *See id.*

The Court does not exercise its discretion to deny arbitration of the fraudulent transfer claim.

## III.   THE ARBITRABILITY OF THE FRAUDULENT TRANSFER AND AIDING AND ABETTING CLAIMS IS DELEGATED TO THE ARBITRATORS

Foley correctly argues that the Court does not have authority to determine which claims are subject to arbitration because the arbitration clause grants exclusive authority to the arbitrators to determine the scope of the arbitration.  ECF No. 8 at 21.

The Supreme Court has acknowledged that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' issues of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68 (2019) (internal quotation marks and citations omitted). "[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Id.* at 69. The court may not determine arbitrability of the dispute if the arbitration agreement delegates arbitrability to an arbitrator. *Id.*

The Engagement Letter's arbitration clause provides that "[i]f a dispute arises between the Committee and the Firm related in any way to . . . the issue of arbitrability of the dispute, the Committee and the Firm agree that the dispute will be resolved solely through confidential binding arbitration." ECF No. 8-2 at 6. The arbitration clause also provides that the arbitration "shall proceed pursuant to the JAMS Comprehensive Arbitration Rules and Procedures ('Rules'), except to the extent provided for herein or otherwise agreed in writing." ECF No. 8-2 at 6. The JAMS arbitration rules provide:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

JAMS Rules 11(b).

The language of the arbitration clause clearly and unmistakably delegates issues of arbitrability to the arbitrator. The Fifth Circuit and Supreme Court of Texas have also held that incorporation of similar

JAMS and AAA arbitration rules serve as clear and unmistakable delegations of arbitrability issues to the arbitrator. *See Work v. Intertek Res. Sols., Inc.*, 102 F.4th 769, 772 (5th Cir. 2024); *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 708–712 (Tex. 2023), *reh'g denied* (June 9, 2023).

The parties' dispute over the arbitrability of the Trustee's fraudulent transfer and aiding and abetting claims is delegated to the arbitrators under the arbitration clause. The Court compels arbitration of the claims without making any determination as to their arbitrability. If the claims are arbitrable, they will proceed in arbitration. If they are not, they will be litigated before this Court.

## IV. THIS ADVERSARY PROCEEDING IS ABATED PENDING RESOLUTION OF THE ARBITRATION

"When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see also* 9 U.S.C. § 3. Moreover, "when an issue is pending in both arbitration and litigation, the [FAA] generally requires the arbitration to go forward first; arbitration should be given priority to the extent it is likely to resolve issues material to the lawsuit." *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 195 (Tex. 2007).

Foley's motion to compel arbitration requests a stay pending completion of the arbitration. ECF No. 8 at 29. Because the arbitrability of the fraudulent transfer and aiding and abetting claims is to be determined by the arbitrators, with the remaining claims to be arbitrated, there are currently no live claims in this adversary proceeding. These circumstances justify the abatement of this adversary proceeding.

This adversary proceeding is abated pending resolution of the arbitration.

## CONCLUSION

The Court will issue an order consistent with this Memorandum Opinion.

SIGNED 02/26/2025

_____
Marvin Isgur
United States Bankruptcy Judge